UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **ARVEL D. GANN** <br> **DONNA C. GANN** | **02-13173** |
| DEBTORS | CHAPTER 7 |
| **MARTIN A. SCHOTT** <br> **TRUSTEE** | ADV. NUMBER <br> **03-1077** |
| PLAINTIFF | |
| V. | |
| **ARVEL D. GANN AND DONNA C. GANN** | |
| DEFENDANTS | |

## MEMORANDUM OPINION

The trustee's complaint against debtors Arvel and Donna Gann alleged that the debtors knowingly and fraudulently failed to list several assets in their schedules, and that as a result their discharge should be denied under 11 U.S.C. §727(a)(2)(A) and (B), and §727(a)(4)(A). The trustee's amended complaint claimed in the alternative that the Ganns represented in their schedules, and also stated at their meeting of creditors, that they were not holding anything of value that belonged to another person. The trustee alleged that when the debtors filed bankruptcy on November 6, 2002, Donna Gann had a large antique diamond ring that she claimed to have given to her granddaughter before bankruptcy. As a result of the debtors' failure

to disclose that Mrs. Gann had the ring, the trustee also urged the Court to deny the debtors' discharge pursuant to 11 U.S.C. §727(a)(4)(A).

The Court has weighed the evidence and concludes that it will deny the debtors' discharge.

## Factual Background

Because the trustee's complaint is based on the debtors' omission from their schedules of information concerning valuable property, a description of that property – a ring and an interest in a succession – is essential to understand the trustee's claims.

### I. The Ring

Donna Gann worked for Mary Monk for nearly 20 years. In 2000, Mrs. Monk gave Mrs. Gann a lady's platinum ring featuring a European cut diamond weighing approximately 1.65 carats, flanked by diamond baguettes.[1] Mrs. Gann occasionally wore the ring to church services and other places. She testified that in September of 2001 she "verbally" made a birthday present of the ring to her eight-year-old granddaughter, Haley Castille. However, the debtor did not deliver the ring to the child at that time. In fact, both Mrs. Gann and her daughter wore the ring after the debtor claimed to have gifted it to her granddaughter. The debtor conceded that her granddaughter never actually wore the ring. Mrs. Gann had possession of the ring when she filed her bankruptcy petition, but gave it to her granddaughter in December 2002, a month after petitioning for bankruptcy relief. The debtor admitted under examination by the trustee that she did not list the ring as property owned by her or as property in her possession and owned by

---

[1] The ring is more fully described in the Court's November 7, 2003 order approving its sale for $6500, which was introduced into evidence as Exhibit T-2. The trustee hired an appraiser to value the ring. His report estimated its value as $12,800. *See* Exhibit T-8.

2

another person, in her response to question 14 on the statement of financial affairs filed in the bankruptcy case.[2]

## II. The Bequest

In a last will and testament dated October 4, 1996, Mrs. Monk bequeathed $40,000 to Mrs. Gann.[3] Mrs. Monk died on October 27, 2002, only ten days before the debtors filed bankruptcy.

Mrs. Gann testified at trial that she saw Mrs. Monk's will for the first time in March 2003, during an examination by the trustee,[4] although she admitted that Mrs. Monk had told her from time to time that she "would be taken care of" when Mrs. Monk died. In any event, regardless of the date on which she learned of the bequest, Mrs. Gann conceded that she did not list her interest in the succession as an asset in her bankruptcy schedules, and admitted that she did not amend the schedules to include the bequest after she learned of it.[5]

Despite the proximity of Mrs. Monk's death to her bankruptcy, and her examination testimony, Mrs. Gann testified in response to her lawyer's questions that she was uncertain whether she would inherit anything from Mrs. Monk. She claimed that, although Mr. Monk, who died in 1989 or 1990, also had promised to leave her a home in his will, she received nothing from him. Apparently, the debtor relies on this to suggest that she had no basis for

---

[2] The statement of financial affairs was admitted into evidence as part of exhibit T-1.

[3] The will was admitted into evidence as part of exhibit T-4. Mrs. Monk amended the will with two codicils, neither of which is relevant for purposes of this opinion.

[4] Mrs. Gann was impeached with her rule 2004 examination testimony establishing that she learned about the will in 1998 or 1999.

[5] Section 541 of the Bankruptcy Code provides that a debtor's bankruptcy estate includes any property in which the debtor has an interest at the commencement of the bankruptcy case. 11 U.S.C. §541(a)(1). Mrs. Gann was seized with her interest in the Monk succession at the moment of Mrs. Monk's death. La. Civ. Code art. 935 (2003); *Baten v. Taylor*, 386 So.2d 333 (La. 1979). Accordingly, the bequest is property of the Ganns' bankruptcy estate. *In re Winsted Memorial Hospital*, 249 B.R. 588 (Bankr. D. Conn. 2000).

believing when she filed her bankruptcy petition that she would inherit anything from Mrs. Monk.  However, Mrs. Gann conceded in response to the trustee's questions on redirect examination at trial that she knew she would receive something under Mrs. Monk's will when she filed for bankruptcy.

In addition, James C. Dewey, the executor of Mrs. Monk's estate, testified that he told Mrs. Gann in 1997, not long after Mrs. Monk signed her will, that Mrs. Monk had bequeathed her a substantial amount of money.  Arvel Gann even admitted to the trustee at trial that he and his wife knew they had "been taken care of" in the will by the day they had filed their bankruptcy petition.

Based on this evidence, Mrs. Gann's claims that as of November 2002 she knew nothing of a provision for her in Mrs. Monk's will, and that she believed that she would receive nothing under the will, simply are not credible.

Moreover, even if the debtors had not known of the specific provisions of the will and Mrs. Gann's prospective inheritance before Mrs. Monk's death, they definitely knew within a few days thereafter.  By letter dated October 31, 2002, Mr. Dewey, as executor of Mrs. Monk's succession, instructed Donna Gann to vacate a succession property that she and her husband occupied.[6]  In response to the letter, the debtors convinced a state district judge to call the executor on November 6, 2002[7] concerning the executor's demand that the debtors move out of the house.  The debtors claimed that they were entitled to stay in the house for a year, based either on a verbal lease or their understanding of the terms of Mrs. Monk's will.[8]  The existence

---

[6] Mr. Dewey's October 31, 2002 letter was admitted into evidence as Exhibit T-5.

[7] The date of the telephone conversation was established by exhibit T-7, a November 7, 2002 letter from the executor to one of Mrs. Monk's grandchildren and heirs.

[8] In fact, the will contained Mrs. Monk's request that Mrs. Gann be retained for up to a year as an employee of Lakeside (the Monk family plantation) or the Monk succession.

4

and terms of an agreement to occupy the property are irrelevant to this opinion. What is relevant is that by November 6, 2002, the very day they filed for bankruptcy protection, Mr. and Mrs. Gann had enough information to make them aware of their potential interest in the succession, and therefore had a duty to disclose that interest in their schedules. They did not disclose that interest in their schedules.

## Analysis

### I. Section 727(a)(2) Claim

The bankruptcy system depends on debtors' making full, complete and honest disclosures in schedules and statements. *In re Dreyer*, 127 B.R. 587 (Bankr. N.D. Tex. 1991), citing *Hudson v. Wylie*, 242 F.2d 435 (9th Cir. 1957). Their failure to disclose information will result in the loss of their discharge.

To prevent a debtor's discharge under Bankruptcy Code section 727(a)(2), the trustee must prove that the debtors "with intent to hinder, delay or defraud a creditor or an officer of the estate…transferred, removed, destroyed, mutilated or concealed or [ ] permitted to be transferred, removed, destroyed, mutilated or concealed—

    (A) property of the debtor, within one year before the date of the filing of the petition; or

    (B) property of the estate, after the date of the filing of the petition."

Concealment under this section is not limited to physical concealment. It also comprises a debtor's failure to divulge information owed to a trustee. 6 COLLIER ON BANKRUPTCY §727.02 [6][a] (15th ed. 2003).

An objector under §727(a)(2) need only show that the debtor acted "with one of three states of mind—a showing of intent to *defraud* is not necessary." *In re Towe*, 147 B.R. 545, 548

5

(Bankr. D. Mont. 1992), citing *In re Elholm*, 80 B.R. 964 (D. Minn. 1987) (emphasis added). The necessary intent is proven most often by circumstantial evidence and inferences drawn from the debtor's acts. *In re Dennis*, 330 F.3d 696, 701-2 (5th Cir. 2003); *Matter of Hughes*, 184 B.R. 902, 908 (Bankr. E.D. La. 1995).

The evidence in this case indicates that the debtors failed to make a complete disclosure of their assets, and therefore intended to hinder the trustee by concealing the bequest.

Mr. and Mrs. Gann concealed from the trustee Mrs. Gann's interest in the $40,000 bequest by Mrs. Monk. The debtors' testimony established that they both knew Mrs. Gann would receive a substantial amount of money under Mrs. Monk's will. Donna Gann admitted that Mrs. Monk told her on several occasions before she died that Mrs. Gann "would be taken care of." Arvel Gann also admitted under oath that he was aware that his wife would receive money under Mrs. Monk's will. In addition, James Dewey, the executor of Mrs. Monk's estate, testified that he told Mrs. Gann that Mrs. Monk's will provided that she would receive money. The evidence established beyond any doubt that the debtors knew of the bequest when the filed for bankruptcy.

Despite their knowledge of the bequest, Mr. and Mrs. Gann did not list it in their schedules. Accordingly, the trustee has carried his burden of proof under §727(a)(2)(B).

## II. Section 727(a)(4)(A) Claim

Section 727(a)(4)(A) of the Bankruptcy Code prevents a debtor from obtaining a discharge if the debtor knowingly and fraudulently made a false oath or account in, or in connection with, the case. Under this section, the trustee must prove that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially

6

to the bankruptcy case." *Matter of Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992). Oaths included in this provision include statements or omissions in the petition or schedules, and statements given by the debtor at an examination during the case. *Hughes*, 184 B.R. 902, 909 (Bankr. E.D. La. 1995). A false oath relates materially to the case "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992), quoting *In re Olson*, 916 F.2d 481, 484 (8th Cir. 1990). False statements in, or omissions from, the petition or schedules, or false statements given by the debtor at an examination during the case, will justify denial of discharge under §727(a)(4)(A). *Hughes*, 184 B.R. 902, 909 (Bankr. E.D. La. 1995).

Mrs. Gann testified that she had the diamond ring when she filed bankruptcy, and retained possession of it until December 2002, several weeks after her bankruptcy filing. She has resisted the trustee's claims by arguing that she did not own the ring when she filed, having given it to her granddaughter. However, she did not deliver the ring to the child until after bankruptcy. Her retention of possession supports the conclusion that the transfer was a simulation, and did not actually change ownership of the ring. La. Civ. Code art. 2480.[9] *See also Matter of Ulrich*, 279 B.R. 187, 193 (Bankr. E. D. La. 1987).[10] Accordingly, the ring remained her property as of the bankruptcy filing. The debtors' decision not to schedule the ring -- arguably their most valuable possession[11] -- is evidence of their intent to conceal it.

---

[9] Louisiana Civil Code article 2480 provides in part: "When a thing sold remains in the corporeal possession of the seller the sale is presumed to be a simulation . . . ."

[10] The Court did not actually adjudicate the issue of simulation with respect to the transfer of the ring because it was turned over to the trustee and later sold with Court approval. *See* footnote 1, *supra*.

[11] The debtors' schedules include only one asset worth more than the ring, a 1999 Ford pickup truck encumbered beyond its value.

Mrs. Gann freely admitted that she did not disclose on her schedules that she was holding a ring that she claims to have donated to her granddaughter before bankruptcy, and therefore that she is not culpable for failing to list it as an asset. Although the debtor's version of events in connection with her donation of the ring to her pre-teenage granddaughter is completely implausible, the Court need not determine whether Mrs. Gann actually donated the ring when she claimed to have done so, or merely invented a justification for failing to list the property in her bankruptcy schedules. The evidence establishes that the debtors knowingly and fraudulently failed to list the diamond ring as property being held for another person, as they should have in response to statement of financial affairs question 14.

Accordingly, the debtors knowingly and fraudulently made false oaths sufficient to bar their discharge under 11 U.S.C. §727(a)(4)(A).

## Conclusion

The Court will deny the debtors' discharge under 11 U.S.C. §727(a)(2)(B) and §727(a)(4)(A). The trustee's objection to discharge under §727(a)(2)(A) need not be addressed due to the denial of the debtors' discharge under §727(a)(2)(B).

Baton Rouge, Louisiana, March 8, 2004.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE